State *v.* Clegg.

# SUPREME COURT OF ERRORS.

## NEW LONDON COUNTY, OCTOBER TERM, 1858.

Present,

STORRS, C. J., HINMAN, ELLSWORTH, SANFORD AND PARK, Js.

### STATE *vs.* WILLIAM CLEGG.

The act of 1858, to amend the charter of the city of Norwich, which gives jurisdiction to the police court of that city over "crimes and misdemeanors committed within the limits of the town and city of Norwich," does not give jurisdiction over offenses committed within the town, but without the limits of the city.

State *v.* Clegg.

THIS was a complaint by a grand juror of the town of Norwich, to the police court of the city of Norwich, charging the defendant with illegally selling spiritous liquors " at and within the limits of the town of Norwich." The defendant demurred to the complaint, but the court held the complaint sufficient, and rendered judgment against the defendant. From this judgment the defendant appealed to the superior court, and in that court moved that the case be stricken from the docket, on the ground, first, that the police court had no jurisdiction over offenses committed without the limits of the city, and, secondly, that the statute establishing the court was unconstitutional in its provision for the election of the judge of the court by the voters of the city, and that the judge of that court having been so elected had no authority to act. The questions arising on this motion were reserved for the advice of this court.

The question as to the constitutionality of the provision with regard to the election of the judge was elaborately argued, and was the only question made before the court, but as the court decided the case wholly upon the other point, the briefs of counsel are omitted. The details of the statute establishing the police court and defining its jurisdiction, sufficiently appear from the opinion of the court.

*Wait* and *Child,* in support of the motion.

*Willey,* (State Attorney,) and *Halsey,* (with whom was *Crosby,*) contra.

STORRS, C. J. The original complaint or information presented to the police court in this case, charges that the offense imputed to the accused was committed " at and within the limits of the town of Norwich," without stating that it was also committed within the city of Norwich.

It of course assumes, that, by the just construction of the act establishing that court, jurisdiction was conferred upon it of that kind of offense, if it was committed in that town, although not within that city.

State *v.* Clegg.

If, therefore, such jurisdiction was given to that court only where the offense was committed within the limits of the city, it is obvious that it had no right to take cognizance of the offense charged in the complaint, and that the superior court, to which the appeal was taken, consequently had no jurisdiction of the case, and should dismiss it for that reason. On examining that act we are of the opinion that it confined the jurisdiction of that court to offenses committed within that city.

This point was not made on the argument before us, probably because the parties desired to obtain our decision on the constitutional questions upon which the case was placed ; but the conclusion to which we have come upon it, renders it unnecessary to consider those questions; and their magnitude and delicacy are such, that we do not feel called upon to express an opinion upon them unless the case requires it. We therefore waive their consideration.

The title of the law creating the police court in question, which it is allowable to resort to as a help in its construction, although it does not in this case, nor generally, furnish any decisive argument, is " an act to amend the charter of the city of Norwich."

Although it has been long settled, that the title of a statute may be considered by courts in their construction, as a key to the meaning of the makers, it certainly furnishes, in ordinary modern statutes, less light in that respect than it did formerly, when the titles of acts were framed with a view more especially to indicate their particular object. Yet we should even now hardly expect that so great a change in a charter of a local municipal corporation, like one of our cities, as the extension of its judicial jurisdiction to the degree claimed by the defendant in error, would be contemplated in an act, the title of which should suggest only that it was passed for the purpose of amending its charter.

It is highly probable that this act was passed on the application and by the procurement of the city alone, whose charter was designed to be amended, especially considering the practice in such cases, and the provision in the charters

of our cities that they may be altered and amended on their application; and although it would not be strictly incorrect to call an act an amendment to the charter, which should extend its jurisdiction beyond its limits to the extent which must here be claimed, yet, without laying undue stress upon this topic, it may be said that it would certainly be no more than reasonable to infer, from the general and unsuggestive title of the act in question, that its only object was to correct some defects in the charter which should affect only the citizens of the city, without altering the general scope of its powers and privileges in regard to the extent of their locality, and not to subject the people of the state, living or being without the city, for criminal acts done without its limits, to the jurisdiction of the city tribunals, in whose appointment they have not, either personally or by representation, any voice, if it is conceded that it is competent to provide for the appointment of the judges in those tribunals by citizens of the city exclusively.

But, passing to the body of the act now in question, and looking at its object, from which great light in regard to its intention is to be derived, we find that object most explicitly stated, in the commencement of the first section, to be the establishment of a " police court " " within and for the city of Norwich," of which the judge is to be chosen by the court of common council of that city, and is to " have and exercise in addition to the jurisdiction and powers relating to criminal cases arising within the incorporated limits of said city, now vested in justices of the peace of the town of Norwich, the other powers and duties conferred on such police judge by [said] act." Then follows a provision directing how the place of said judge shall be filled or supplied, in the cases, respectively, of a vacancy in the office by the death, removal or disability of the incumbent, or his inability or disqualification to act in any particular cause, by a citizen or justice of the peace resident in said city. And the next section provides that, from and after the appointment of any such judge, no person, other than himself, shall, within the limits of said city, have, use, or exercise any of the powers

State v. Clegg.

conferred on said judge in the preceding section, except in cases specially provided for in the subsequent sections, with the exception that magistrates, then authorized by law to issue warrants for the arrest of offenders, may issue the same thereafter, and discharge also any ministerial duty then by law imposed on them; but, by a further provision, it is declared that all persons arrested on warrants issued, on account of offenses committed within the jurisdiction of said police court, shall be brought before and dealt with by that court exclusively.

Now it is most plain, unless some power is subsequently given to the police court to take jurisdiction of crimes committed out of the limits of the city, that it was the design of the legislature in this act to give it exclusive jurisdiction of the offenses therein mentioned which should be committed within those limits, and to substitute, as to such offenses, that court, in the place of the tribunals previously provided by the general statutes for their trial and disposition.

We come next to the fourth section of the act, in which the jurisdiction of the police court is specifically conferred and declared. It provides that it " shall have authority, subject to the provisions of this act, to hear and determine charges for crimes and misdemeanors committed within the limits of the town and city of Norwich, the punishment of which does not exceed a fine of two hundred dollars, or six months imprisonment in the common jail or county workhouse, or such fine and imprisonment both." Then follows a series of provisions, providing for appeals from the judgments of said court, and requiring it to bind over to the superior court for offenses which it has not jurisdiction to try and determine, and adapting to the police court, in regard to the appointment and duties of its clerk, his acceptance of the office, the disposition of fines, penalties and costs, founded on or recovered by reason of the judgments of that court, the mode of preferring presentments or complaints to it, and the mode of serving and returning process, and generally to its proceedings, those provisions of the general statutes applicable on those subjects to other tribunals having similar

jurisdiction ; in which it is observable that the fines, penalties, costs and moneys recovered in that court, are appropriated to the exclusive use and benefit of the city.

The terms of the fourth section which have been cited, conferring jurisdiction on the police court to hear and determine charges for the crimes and misdemeanors therein mentioned, " committed within the limits of the town and city of Norwich," on which the decision of the question now under consideration principally depends, and on which alone it can be claimed that such jurisdiction extends to offenses committed out of the limits of the city, is undoubtedly, taken by itself only, and not in connection with what precedes or follows it, if indeed that were practicable, susceptible, grammatically, of a construction which would embrace offenses committed within the town, although not within the city of Norwich. It is equally clear that, taken in the same way, they are also susceptible of a construction which would require the offense to be committed within both the town and city. It may be said that if the object was to confine the cognizance of that court to offenses committed within the city, the use of the word " town " was unnecessary and superfluous, and that it is proper to give effect to every word of a statute if possible. It is, however, a sufficient answer in this case, that the terms used are, at least, ambiguous ; that it is not sufficient that the language is susceptible of a construction by which such a local court as that in question is invested with jurisdiction over those who are without the particular locality for which it was created, but that it should be shown affirmatively and clearly that such jurisdiction was intended to be given ; and that here there is not only no clear language, or form of expression which might easily have been adopted to show this, but that, as it would have been equally easy, it would also have been more correct and precise to have used the disjunctive particle *or*, instead of *and*, in the phrase just quoted ; and that, by the substitution of the former, all possible uncertainty would have been avoided, by giving to the court, in unmistakable terms, jurisdiction of crimes committed either in the town or city. But, whichever

might be the most natural construction of the act, if there were nothing in its object, or the other parts of it, to determine the meaning in which these terms were used, an argument derived from that consideration, on a question of this kind, is entitled to very little weight, as the case is rarely if ever presented, where there is no clue to its meaning discoverable from other sources, either extraneous to the act itself, or the other parts of it, to evince the sense of the legislature. And, in the present case, we are of the opinion that, from the latter source particularly, the argument is quite satisfactory to show that the phrase in question, awkwardly expressed, to say the least, was not designed to extend the jurisdiction of the police court to acts committed out of the limits of the city for which it was created. In addition to these considerations, we derive also from other parts of the act reasons which very decisively corroborate this construction, and to which we will briefly advert.

In addition to the authority given to that court, which has been already mentioned, the fifteenth section gives power to all officers, authorized to serve process issued by and returnable to that court, to arrest and bring to trial, without previous complaint and warrant, all persons guilty of drunkenness, vagrancy, disorderly conduct, breaches of the peace, and common assaults, when taken and apprehended in the act, or on speedy information of others ; but that power is expressly limited to cases where " such offenses shall be committed within the limits of said city." By the eighteenth section also, sureties of the peace and good behavior may be required by said police court, in such cases and in such manner as justices were then authorized by law to require the same ; but it is provided that " the cause or occasion of requiring such sureties shall arise within the limits of said city." If it was intended to extend the jurisdiction of that court to any offenses or acts committed out of the limits of the city, we can discover no sensible reason why, in respect to the power given in the two last mentioned sections, its exercise should be restricted to cases arising only within such limits. It is then provided in the nineteenth section, that the act should

take effect whenever it should be accepted by the city as a part of its charter, at a city meeting warned and held for that purpose; thus confirming the conclusion that only the citizens of that city, or others resident within it, were intended to be affected by its provisions.

Without going into a more minute examination of the other parts of this act, none of which militate against the construction we have adopted, we are satisfied that it gave to the police court no jurisdiction of the offense charged in this information, and that therefore the superior court ought to dismiss the case.

In this opinion the other judges concurred.

Advice that case be stricken from the docket.